This matter presents a timely appeal from a jury verdict and judgment rendered upon such verdict by the Belmont County Common Pleas Court, finding defendant-appellant, Jeffrey Hocker, guilty on one count of aggravated felonious assault in violation of R.C. 2903.11(A)(2), along with his subsequent sentencing thereon.
On June 25, 1996, the victim, Collier Patterson, was attending a barbecue with his girlfriend, Michelle Bower (Bower). Appellant made a phone call to the residence requesting to visit with his daughter, whom he had sired with Bower. (Tr. 25). After Bower became upset, the victim got on the telephone with appellant and a heated conversation ensued. (Tr. 26). Appellant and the victim agreed to fight at the Certified Gas Station (gas station) located in Powhatan Point, Belmont County, Ohio. (Tr. 26-27).
Appellant took a kitchen knife from his home and left for the gas station. The victim and his nephew left the barbecue and headed for the gas station. When the victim and his nephew arrived at the gas station, appellant had not yet arrived. The victim and his nephew left the gas station and headed toward appellant's house. While they were traveling southbound on State Route 7 toward appellant's house, they passed appellant traveling northbound on State Route 7. The victim and his nephew pulled into a Nazarene Church parking lot to turn around. (Tr. 30). While they were turning around, appellant pulled into the Nazarene Church parking lot. (Tr. 30).
The victim and his nephew got out of their vehicle. (Tr. 30). Appellant grabbed his knife and got out of his vehicle. (Tr. 30). The victim told appellant to throw the first punch and appellant obliged. (Tr. 32). A scuffle ensued, which ended when appellant ran away. (Tr. 33). At some point during the course of this fight, the victim's eye was cut by appellant's knife. (Tr. 34). As a result of this injury, the victim's eye had to be removed. (Tr. 39).
Appellant was arrested and charged with aggravated felonious assault. The trial in this matter was scheduled to be held in Courtroom No. 3 at the Belmont County Jail. Appellant filed a pretrial motion and writ of prohibition requesting an order that the trial be held at the Belmont County Courthouse. By docket entry dated March 18, 1997, the trial court denied appellant's motion and the writ of prohibition.
The case proceeded to jury trial at Courtroom No. 3, located in the Belmont County Jail, on March 20, 1997. On March 21, 1997, the jury found appellant guilty of aggravated felonious assault, in violation of R.C. 2903.11(A)(2). On March 24, 1997, Appellant was sentenced to a term of incarceration of not less than eight years nor more than fifteen years.
Appellant sets forth two assignments of error on appeal.
Appellants first assignment of error alleges:
 "The trial court erred in overruling appellant's motion to not try appellant's criminal case in a jail courtroom thereby depriving appellant of a fair and public trial by an impartial jury."
Appellant argues that his right to an impartial jury under the United States and Ohio Constitutions was violated by the trial court in this case. Appellant contends that because of said violations of constitutional law, his presumption of innocence was eroded; there was an interference with the jury's ability to remain impartial; and, his right to obtain witnesses was chilled.
Appellant relies principally upon State v. Lane (1979),60 Ohio St.2d 112, as authority for his arguments. In Lane, supra,
the Ohio Supreme Court determined that by holding a trial in an institution for an offense committed within that institution, the constitutional right to a fair trial is abridged in three ways: the presumption of innocence which much attach to the criminal defendant is eroded; there is a major interference with the jury's ability to remain impartial; and the right of the defendant to obtain witnesses is chilled.
Appellant points to the various amenities, or lack thereof, of Courtroom No. 3, at the Belmont County Jail, to construct his analogy with Lane, supra. Appellant suggests that extra security measures were taken because of the trial's location at the Belmont County Jail, which may have had an affect on each juror's ability to remain impartial. Appellant argues that Courtroom No. 3 did not have proper facilities for jurors, which may have caused a sense of confinement for the jurors. Appellant contends that these factors may have also had a chilling effect on the public's ability to attend the trial.
The attenuated connection appellant has constructed between the facts of Lane, supra, and the facts of the case sub judice,
do not sustain this assignment of error. In Lane, supra, the defendant was tried in a makeshift courtroom, located in a maximum security prison, for an offense he committed whileincarcerated in that prison.
In the case at bar, appellant's trial was held in a courtroom, located inside the Belmont County Jail, that was specifically designed and operated for such purpose. People who entered the courtroom were subjected to security procedures that have been implemented in courtrooms throughout the State of Ohio. These procedures have not been held to impermissibly affect a defendant's right to a fair trial. It is obvious that the government's interest in protecting the public by conducting the security procedures complained of would far outweigh any minimal interest the defendant might have in discontinuing these procedures. The witnesses that testified at appellant's trial were testifying to events which occurred outside of the county jail walls. Courtroom No. 3 is located only four miles from the Belmont County Courthouse and is not on the outskirts of civilization as was the case in Lane,supra.
The facts set forth in this case do not lead to the conclusion that appellant's right to a fair trial was abridged. Appellant was afforded the same protections afforded to every defendant during the course of a criminal prosecution.
Appellant's first assignment of error is found to be without merit.
Appellant's second assignment of error alleges:
 "The Court erred in not finding Appellant not guilty or guilty of the lesser included offense of aggravated assault in that evidence is against the manifest weight of the evidence."
Appellant contends that he should have been convicted of aggravated assault which requires that the assault occur, "* * * while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force * * *." R.C. 2903.12. Appellant argues that although the decision to bring the knife was pre-meditated, the decision to actually use the knife was the result of a sudden fit of rage. Therefore, he concludes that the manifest weight of the evidence does not support a conviction for aggravated felonious assault.
When faced with a manifest weight of the evidence argument, an appellate court may not reverse a judgment arising from a jury verdict absent the unanimous concurrence of all three appellate judges. State v. Thompkins (1997), 78 Ohio St.3d 380,389. Thompkins elaborated on the concept of weight of the evidence stating:
 "* * * Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence
sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' * * *
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a ' "thirteenth" ' juror and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs, 457 U.S. at 42, * * *. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, * * * ('The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed * * *.')." Thompkins, supra at 387.
The trier-of-fact is in the best position to assess the credibility of the witnesses presented at trial, to decide conflicts in testimony, and to determine the weight to be afforded the evidence offered. State v. DeHass (1967), 10 Ohio St.2d 230.
In the case sub judice, appellant organized a fight with the victim and he brought a knife to this fight. He threw the first punch so that the fight could begin. It is clear that the jury could find the injuries to the victim were the product of calculation rather than passion. Passion is required for a conviction on the lesser charge of aggravated assault. Accordingly, the judgment of the trial court was not against the manifest weight of the evidence.
Appellant's second assignment of error is found to be without merit.
The judgment of the trial court is affirmed.
Hon. Edward A. Cox, Hon. Gene Donofrio, Hon. Cheryl L. Waite, JUDGES.
Donofrio, P.J., concurs.
Waite, J., concurs.
APPROVED:
 ------------------------ EDWARD A. COX, JUDGE